BOWEN MATLACK ET AL., Trustees of the Central Presbyterian Church of Cincinnati *v.* J. DAN. JONES, Auditor, and ROBERT HAZLEWOOD, Treasurer of Hamilton County.

(No. 5,851.)

1. By the act of March 12, 1853, no exemption from taxation is granted to lands purchased by a church corporation, in contemplation of the erection of a church edifice thereon.

2. Such exemption is restricted to the grounds attached to, and necessary for the proper occupancy, use and enjoyment of houses in present, actual and exclusive use, for public worship. It does not extend to houses in progress of erection, and unused.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered against the plaintiffs, at special term in May, 1857.

The plaintiffs, a religious society, incorporated by a law of this State, filed their petition in special term, asking the intervention of the court, to restrain the defendants from selling certain real property belonging to the plaintiffs, which, it was alleged, had been illegally assessed for taxation, and returned delinquent on the duplicate for the year 1856. The ground upon which relief was asked was that the property about to be sold for taxes was exempted by law from taxation, as it was held for religious purposes, and none other. To establish their right to exception, from the general rule, it was alleged that, on the first day of February, 1853, the plaintiffs purchased a lot of land in Cincinnati, intending to build thereon a house for public worship; but afterward, finding they held more ground than was necessary for that purpose, they sold a part of it for a female seminary, which is now occupied for that object. No profit on the original purchase was derived from the sale, the proceeds thereof enabling the plaintiffs to pay the debt due for the original purchase; the remaining part of the lot was reserved and held pursuant to the purpose which first induced the plaintiffs to buy it. Soon afterward, the trustees proceeded to obtain funds, by subscription, to erect a church upon the premises, and employed an architect to prepare plans, but did not commence the construction of their church edifice until the taxes, if properly levied, had become due; the delay being occasioned by the inability of the society to raise the requisite funds, though it always has been their intention thus to improve and appropriate the property.

It is claimed that the lot ought not to have been taxed, although the same had not been used for religious purposes; inasmuch, as the original purpose was clearly manifested by the actual commencement of the building for the intended

house of worship, a short time before the petition was filed, on which the work was then in progress.

The plaintiffs prayed for a restraining order to prevent the sale, and for a decree declaring the tax to have been illegally assessed.

A provisional injunction was allowed, and the defendants having demurred, the whole case was submitted to one of the judges in special term, who sustained the demurrer, and ordered the petition to be dismissed.

*R. D. & J. H. Handy,* for plaintiffs.

*Ferguson & Long,* for defendants.

STORER, J., delivered the opinion of the court.

We are asked to reverse the judgment rendered at special term, upon the general ground that the plaintiffs were entitled to the relief they sought in their petition.

A preliminary question, directly involving our jurisdiction, under the decision, in 1 Handy, 289, *Cin. Gas Light and Coke Co.* v. *Bowman,* would have presented itself, had not the legislature, by the act of April 10, 1856., vol. 53, O. L. 178, expressly conferred upon the several courts full power to restrain the auditor and treasurer, in all cases where the tax is alleged to have been illegally assessed.

The proposition we are asked to consider is, do the plaintiffs exhibit any legal claim to be exempted from taxation?

We need not say that the very term, exemption, presupposes a liability, unless the right assumed is established, and that, consequently, the property, of every description, belonging to individuals or corporations whether public or private, eleemosynary or lay, may be subjected to taxation; nor can it be necessary to restate the general proposition, that the sovereign power alone can make exceptions to the ordinary rule, and when they are made they must be strictly confined within the limitation prescribed.

We take it for granted there can be no constructive or implied exceptions unless the subject is a mere incident of

the property excepted; nor can we be required, in ascertaining what is, or what is not included within the terms of the law, to depart from the ordinary mode by which the meaning of the law makers is determined.

The principles upon which questions relating to taxation, have been decided are clear and simple. The meaning of the legislature is first ascertained, and the subject of taxation then considered in direct reference to the law; words are used in their popular acceptation, and there is no effect either to limit or extend the obvious signification of ordinary terms. 8 Ohio, 189, *Kendrick* v. *Farquhar;* 19 do. 110, *Cincinnati College* v. *The State of Ohio;* see the cases collected in Blackwell on tax titles, 481.

It is alleged by the plaintiffs that their property is reserved from taxation, by section 2, of the 12th article of the constitution as well as the provision of the act of March 12, 1853, amending that of April 13, 1852. (Swan 924): The article of the constitution provides that "laws shall be passed taxing, by a uniform rule, all moneys, credits, etc., and all real and personal property, according to its true value in money; but burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, etc., may by general laws, be exempted from taxation." Power was thus conferred on the legislature to reserve certain classes of property, but the absolute right was asserted to tax every species of property, by whomsoever owned, and it was not their duty, under all circumstances, to make the reservation—they might exercise the authority or not, as they should deem it just and consistent with the higher claim of the government—the law in which the reservation should be made, being always subject to alteration and repeal.

The statute of 1852, which was amended in 1853, provides that "all public school houses, and houses used exclusively for public worship, the books and furniture therein, and the grounds attached to such buildings, necessary to their proper occupancy, use and enjoyment of the same, and not leased,

or otherwise used, with a view to profit—all lands used exclusively as grave-yards, or grounds for burying the dead, except such as are held by any person or persons, company or corporation, with a view to profit, or for the purpose of speculation in the sale thereof," shall be exempt from taxation. Other clauses of the act refer to property belonging to the general, State or municipal governments; and where it was so held by the latter, the same limitations are annexed as those which attach to the first class of exceptions. From these provisions, it would appear, that it was not intended to exempt the property of any religious society, or literary institute, unless actually used and occupied for religious or literary purposes. Houses of public worship, and such additional grounds connected with them, as are necessary to their use, occupation and enjoyment, are expressly reserved; and this would, doubtless, include a liberal quantity of adjacent land, for such purposes, as may be essential to its convenience and protection, but a vacant lot, purchased in contemplation of its use for the future erection of a church, or the interment of the dead, can not be within the legal reservation, until the purpose for which it is alleged to have been acquired is apparent, by its actual use for strictly religious objects.

In former times, no church or churchyard was regarded as bearing a religious character, until both were solemnly dedicated to pious use; and the publicity of the act not only established their claim to sanctity, but gave notoriety to the fact that the worship of the living, and the quiet repose of the dead, would be alike protected, within the walls of the one, or beneath the soil of the other. Our law requires no such ceremony; but it does demand some clear and unequivocal evidence, by which the real intention of those who assume to set apart property for religious uses, shall be manifested; and in applying this rule, it is but the ordinary principle which gives effect to every public dedication, when the right to its enjoyment is called in question.

The property now sought to be exempted, was acquired

by the plaintiffs in 1853.   Whether the fee was conveyed to the corporate body, or held in trust for its use, does not appear from the pleadings; nor does it appear at what time the title was acquired by the church, nor what title they now possess; but, it is admitted, a portion of the lot was sold, and the residue remained vacant and unoccupied until 1856, when the erection of the church edifice was commenced. In the interval, the property was practically withdrawn from taxation, and the burden, which would have been imposed upon it, under ordinary circumstances, was borne by others.

This state of facts presents an interesting question, though its solution may not be difficult.

The reason why property appropriated for religious objects is excepted from taxation is obvious.   It is that an edifice, or a burial ground, erected or acquired by the contributions or grants of christian people, and devoted to the worship of God, or the interment of the dead, should be released from the ordinary burdens of the government, more especially as there is no private interest in the corporation, except to protect the common estate from being perverted to other than its legitimate uses, or destroyed; and the idea of a church structure must include all the appurtenances necessary to its proper enjoyment, whether it shall be adjacent ground, like the glebe of the established church in England, or, perhaps, a parsonage or a rectory; but where there is no such building in being, and none is in progress of erection, it is difficult to understand on what principle exemption can be claimed for land, part of which has already been sold, as the residue might have been, without any perversion, on the part of the plaintiffs, of any existing trust.

If we could suppose, without violence to the statute, when a lot is purchased by a religious society, and preparations are speedily or within a reasonable time, made to build a house of worship, and the building is actually in progress of erection when the tax is assessed, that the exemption might properly apply, in such a case, the work must not be delayed, in its inception, nor cover a series of years in its com-

pletion. A mere intention, however, in good faith, it may have been entertained, to appropriate the property at some future period, to religious purposes, can not give a present character to the property itself, other than it would bear if owned by an individual, and he had resolved to dedicate it to religious purposes, but had never legally accomplished his determination by a grant of the estate.

There must be an occupation of the land, consistent with, and significant of the purpose for which it is intended it shall be enjoyed; until which it can not be maintained that it is set apart for pious uses.

On any other view of the 'question, the trustees of a religious society might purchase the most desirable city property, hold it for years without improvement, and, if it should, meanwhile, increase in value, dispose of it, reaping the benefit of the speculation, without having paid a dollar to the public treasury to sustain the government, which has protected the property from injury and enabled the owners to acquire, as well as to alien it; nay, further, if ever there should be such a case, a religious body, already possessed of a church edifice might be desirous to erect a new and more commodious building, and, in anticipation of such an event, purchase another location for the prospective edifice, and, on the theory of the plaintiffs, the newly acquired property, as well as that already possessed, would be exempted from taxation.

The effect of such an example would be, as we have already intimated, to withdraw property from taxation for an indefinite period, to be limited only by the will or the convenience of the owners; and though, it is said it may yield in the interval no profit to the proprietors, the difficulty is not obviated. It still exists; for, such an answer, to be of any value, must as well apply to individuals who own vacant and unproductive city lots; they may derive no revenue from their estate, but they are never excused from the payment of the taxes with which it is assessed.

On the whole case, we are satisfied, there is no error in

the decision of the judge at special term. We, therefore, affirm the judgment.

Judgment affirmed.